**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 26-80-DLB**

**J.Z.S.**                                                                                    **PETITIONER**


**v.**                                        **MEMORANDUM ORDER**


**MARC FIELDS, et al.,**                                            **RESPONDENTS**

* * * * * * * * * *

## I.    INTRODUCTION

This matter is before the Court on Petitioner J.Z.S.'s Motion to Enforce Judgment (Doc. # 10).  Respondents having filed their Response (Doc. # 13), and Petitioner having filed his Reply (Doc. # 14), this matter is ripe for the Court's review.  For the following reasons, the Court will **deny** the Motion.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Petitioner J.Z.S. is a native and citizen of Venezuela.  (Doc. # 1 ¶ 1).  He entered the United States near Eagle Pass, Texas on November 10, 2023.  (Doc. # 6-1 at 2).  On November 7, 2023, Petitioner was paroled into the United States for a term of one year. (Doc. # 1-5).  On February 20, 2025, Petitioner was detained pursuant to an I-200 Warrant for Arrest of Alien after attending a routine ICE check-in.  (Doc. # 6-3 at 1).  In May of 2025, Petitioner had a custody redetermination hearing which was denied.  (Doc. # 1-8).

On February 23, 2026, J.Z.S. filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. # 1).  On April 16, 2026, this Court issued a Memorandum Opinion and Order directing Respondents to immediately release Petitioner, or in the

1

alternative, provide him with a constitutionally adequate bond hearing.  (Doc. # 8 at 26).  On April 21, 2026, the Immigration Court held a bond hearing for Petitioner.  (Doc. # 9 at 1).  On April 23, 2026, the court issued its decision, denying bond on the grounds that Petitioner "would pose a danger to property or persons" or in the alternative, that Petitioner "is a flight risk such that 'no monetary bond, even if coupled with alternatives to detention, would be sufficient.'"  (Doc. # 9-1 at 1 (citing *Matter of Akhmedov*, 29 I&N Dec. 166, 168 (BIA 2025))).

On May 6, 2026, Petitioner filed the instant Motion to Enforce Judgment requesting this Court order his immediate release, or in the alternative, for this Court to hold its own bond hearing.  (Doc. # 10 at 2).  Respondents having filed their Response (Doc. # 13), and Petitioner having filed his Reply (Doc. # 14), this matter is ripe for the Court's review.

## III.   ANALYSIS

In his Motion to Enforce, Petitioner argues that he was denied a constitutionally adequate bond hearing for multiple reasons, including: (1) the IJ's failure to explain his reasoning; (2) the IJ's failure to consider the evidence; and (3) the IJ's failure to place the burden of proof on the government.  (Doc. # 10-1 at 7).  Additionally, while not explicitly stated, Petitioner seems to argue that his due process rights were violated because IJ Johnson is not a neutral decision maker.  (*See id*. at 13) (Petitioner's bond hearing "was in front of an IJ that has not granted bond for a *single* person this year) (emphasis in original).  The Court will address each argument in turn.

### A.  Failure to explain reasoning and consider evidence

Petitioner first argues that he was denied due process because the IJ "failed to explain the basis for his findings[.]"  (Doc. # 10-1 at 8).  Additionally, he argues that "there is no indication that the IJ considered the evidence before him." (*Id*. at 10).  Specifically,

2

Petitioner argues that "[t]here is no indication from either the bond hearing or the IJ's decision that the IJ considered the evidence that Petitioner submitted or any of the [*Matter of*] *Guerra*[1] factors except for Petitioner's criminal history."  (*Id*. at 9).

Petitioner argues that the absence of any analysis in the IJ's order deprived him of his due process rights.  (*Id*. at 8).  In looking at the IJ's order, the Court agrees that there is a lack of any analysis or explicit explanation.  Nevertheless, the Court finds that the reasoning for the IJ's decision is clear.  The IJ denied Petitioner's bond finding that he is a danger, or in the alternative, a flight risk.  (Doc. # 9-1 at 1).  The IJ then recounts Petitioner's testimony regarding his two different arrests since being in the United States as well as his mental health history.  (Doc. # 9-1 at 2).  Additionally, the IJ referenced the police report from Petitioner's Florida arrest.  (*Id*. at 3).  While the IJ did not include an explicit section detailing why all the above evidence led him to his conclusion to deny bond, it is clear that he considered Petitioner's testimony about his mental health and his criminal arrests, in addition to the police report, to be grounds to deny bond.

Next, the Court is unconvinced that the IJ failed to consider the evidence presented.  First, the IJ's Order states that there was a "full consideration of the evidence presented" which included a "total of 1,264 pages of documents[.]"  (Doc. # 9-1 at 1-2).  Moreover, the Court unpersuaded that the IJ wholly overlooked the *Matter of Guerra* factors.  Petitioner states that he proffered a voluminous amount of evidence addressing key *Matter of Guerra* factors.  (Doc. # 10-1 at 9).  This evidence included:

> (1) his application for asylum, withholding of removal and protection; (2) his SIJS application; (3) an order from an Illinois court finding that he was abused and abandoned by his father; (4) letters of support; and (5) photos with his family.

---

[1]    *Matter of Guerra*, 24 I. & N. Dec. 37 (BIA 2006).

3

(*Id*.).  Petitioner asserts that despite this proffered evidence, the IJ did not consider any of the *Guerra* factors except for Petitioner's criminal history.  (*Id*.).  But the record does not support this assertion.

Pursuant to the *Matter of Guerra*, and IJ may consider several factors, including:

(1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (2) the alien's family ties in the United States, and whether they may entitled the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

24 I. & N. Dec. at 40.

In his analysis, the IJ addressed multiple *Guerra* factors, including how long Petitioner has been in the United States, his family ties to the United States, and his criminal history and the extensiveness of said history.  (Doc. # 9-1).  Moreover, the IJ acknowledged that Petitioner may have a sponsor, and thoroughly discussed Petitioner's mental health history and his ability to manage his mental health.  (Doc. # 9-1 at 2).  The IJ considered more than just Petitioner's criminal history in making his decision to deny bond.  However, even if he had only relied on Petitioner's criminal history, that would be a discretionary decision which this Court lacks jurisdiction to review.  That Petitioner disagrees that his criminal history is not significant enough to deny bond is not for this Court to reconsider.  *See Nielsen v. Preap*, 586 U.S. 392, 401 (2019) (noting that § 1226(e) bars review of discretionary applications of § 1226); *Hernandez-Gabriel v. Tate*, No. 25-cv-5687-H, 2026 WL 161192, at *4 (S.D. Tx. Jan. 20, 2026) (holding that a district court lacked jurisdiction to consider a petitioner's challenge to the correctness of an IJ's

determination that the petitioner posed a flight risk); *Perez Sierra v. Bondi*, No. 25-cv-18829, 2026 WL 497070, at *3 (D.N.J. Feb. 23, 2026) ("This Court lacks jurisdiction to review any discretionary determinations underlying an immigration judge's bond decision, but it can review whether the bond hearing was fundamentally unfair in violation of this Court's order."); *cf. Soto-Medina v. Lynch*, No. 1:25-cv-1704, 2026 WL 161002, at *2 (W.D. Mich. Jan. 21, 2026) (holding that § 1226(e) did not bar consideration of a petitioner's challenge that the discretionary process of § 1226(a) itself is unconstitutional).

### B. Burden of proof

Petitioner next argues that the IJ failed to conduct a constitutionally adequate bond hearing because he did not place the burden of proof by clear and convincing evidence on the government. (Doc. # 10-1 at 10). In support, Petitioner argues that "DHS did not submit *any* evidence, let alone evidence to support that Petitioner is a present danger." (*Id*. at 12) (emphasis in original). Petitioner is correct that DHS did not submit any evidence to the record. Certainly, in a review of the IJ's order, the IJ listed all of the evidence submitted, none of which included evidence submitted by DHS. (Doc. # 9-1 at 1-2). Moreover, the Court reviewed the audio transcript of the hearing and DHS did not call any witnesses. DHS did, however, engage in cross-examination of the Petitioner. Petitioner's cross-examination by DHS was referenced significantly by the IJ in his order. (*Id*. at 2-3). Specifically, the IJ acknowledged Petitioner's cross-examination testimony regarding his Florida arrest, as well as his mental health history.

Despite this acknowledgement by the IJ, Petitioner argues that due to the "lack of analysis, and reliance on the police report, it is not clear that the IJ properly considered whether DHS established, by clear and convincing evidence, that Petitioner is a present

5

danger, in violation of this Court's order." (Doc. # 10-1 at 12). The Court disagrees. As already stated above, the lack of analysis is not fatal. Moreover, the IJ's reliance on the police report—something that was submitted as evidence by Petitioner himself—is a discretionary decision that this Court cannot review. Therefore, neither of these points establish that the IJ did not adequately consider whether DHS properly met its burden of proof. In fact, the IJ states that he

. found that "the Department of Homeland Security carried its burden of proof by demonstrating that Respondent would pose a danger to property or persons." (Doc. # 9-1 at 1).

### C. IJ Johnson is a neutral decision maker

Finally, while not explicitly stated in Petitioner's Motion, he seems to argue that IJ Johnson's high bond denial rate supports his argument that he did not have a constitutionally adequate bond hearing. (Doc. # 10-1 at 12). In his Reply, Petitioner argues that "IJ Johnson denying bond for 97% of noncitizens in front of him, combined with the lack of reasoning and fact-finding here, demonstrates that Petitioner's bond hearing in front of him was indeed a 'sham.'" (Doc. # 14 at 5 (citing *De Leon Trejo v. Bullock*, No. 26-5186, Doc. 16-2 at *4 (6th Cir. May 14, 2026))).

Based on the record, Petitioner has failed to establish that IJ Johnson was not a neutral decisionmaker. The mere fact that IJ Johnson has a high bond-denial rate cannot establish that he lacks neutrality. Even accepting that he denies bond at a higher rate than most IJs, the Court is unable to conclude that these denials resulted from a bias against petitioners, rather than the facts at play in each case. And IJ Johnson evidently considered these facts in reaching his conclusion. (*See* Doc. # 9-1).

6

## IV.    CONCLUSION

Accordingly, for the reasons stated herein, **IT IS SO ORDERED** as follows:

(1)  Petitioner's Motion to Enforce Judgment (Doc. # 10) is **DENIED**; and

(2)  This matter is hereby **DISMISSED** and **STRICKEN** from the Court's active docket.

This 9th day of June, 2026.



Signed By:

David L. Bunning

Chief United States District Judge

G:\Judge-DLB\DATA\ORDERS\Cov2026\26-80 order on motion to enforce.docx